IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TIMOTHY M. BENTON                                                        PLAINTIFF

v.                                                    CAUSE NO. 4:22-CV-71-SA-DAS

THE UNITED STATES OF AMERICA                                            DEFENDANT

ORDER AND MEMORANDUM OPINION

On May 13, 2022, Timothy M. Benton initiated this civil action against the United States.

On January 19, 2023, the United States filed a Motion to Dismiss [12]. That Motion [12] has been

fully briefed and is now ripe for review.

*Relevant Background*

This lawsuit stems from a motor vehicle accident that occurred on October 23, 2015.

According to the Complaint [1], at approximately 9:36 AM, Benton, in his 2001 Chevy Camaro,

was traveling northbound on US Highway 51 in Grenada County, Mississippi. At the same time,

Ledelwin Hardy, while on active duty with the United States Army, was driving an Army National

Guard vehicle in an eastbound direction on Nat G Trout Road near its intersection with US

Highway 51. Benton contends that, as Hardy approached the intersection of Nat G Trout Road and

US Highway 51, Hardy failed to yield the right of way. The two vehicles collided in the northbound

lane of US Highway 51. Benton contends that he suffered substantial personal injuries in the

collision.

On October 19, 2017, David L. Valentine, Esq., acting on behalf of Benton, submitted a

SF-95 form to the Department of the Army, as required to pursue a claim under the Federal Tort

Claims Act ("FTCA").[1] The submission included a cover letter written on Valentine's personal law firm letterhead. The top portion of the letterhead included the following information:

DAVID L. VALENTINE
ATTORNEY AT LAW
POST OFFICE DRAWER 1200
RIDGELAND, MISSISSIPPI 39158-1200

*See* [12], Ex. 1 at p. 4.

The letterhead also included other information regarding Valentine, such as his physical address, phone number, fax number, and e-mail address, but that information, while still contained in the letterhead, was below the above-referenced information.

Via letter to Valentine dated October 23, 2017, the Tort Claims Division of the Department of the Army ("the Agency") confirmed receipt of Benton's SF-95 form and indicated that it would "process the claim under the Federal Tort Claims Act[.]" [12], Ex. 2 at p. 3. That letter was mailed to Valentine at the post office box address listed above.

Approximately a year later, on October 24, 2018, the Agency sent an additional letter to Valentine regarding Benton's claim. In that letter, the Agency advised that its "Tort Claims Paralegal Investigator passed away unexpectedly in August 2018. . . Our office is in the process of establishing a new course of action regarding your individual claim. We ask for your patience with us while we review each open claim." [18], Ex. 2 at p. 1. Like the previous letter, this letter was addressed to Valentine's post office box address listed above.

On January 4, 2021, the Agency sent a letter to Valentine advising him that the claim had been denied. *See* [12], Ex. 2 at p. 4. The letter set forth the reasoning for the denial and ultimately explained that "[i]f your client is dissatisfied with the action taken on this claim, he may file suit

---

[1] Approximately one year earlier, Valentine, on Benton's behalf, submitted a notice of claim letter pursuant to the Mississippi Tort Claims Act ("MTCA") to the Mississippi Department of the Military and to the Mississippi Attorney General. However, the present litigation is only based upon FTCA—not the MTCA.

in an appropriate U.S. District Court no later than six months from the mailing date of this letter. By law, failure to comply with this time limit forever bars your client from further suit." *Id*. at p. 4-5. Like the two previous letters, the denial letter was mailed to Valentine's post office box. The denial letter was mailed via certified mail. However, on April 22, 2021, the denial letter was returned to sender as unclaimed.

On May 13, 2022, Benton, through Valentine as his counsel, filed this lawsuit against the United States. In his Complaint [1], Benton contends that Hardy's negligent operation of the Army National Guard vehicle caused the collision. He requests damages in excess of $2,000,000. After Benton failed to complete service of process within the time allotted by the Federal Rules of Civil Procedure, this Court entered an Order to Show Cause [5], directing Benton to show cause as to why the case should not be dismissed. On November 10, 2022, the Court granted Benton an additional thirty days to serve process. *See* [7]. Benton eventually completed service of process on the United States on December 1, 2022.

In its Motion to Dismiss [12], the United States contends that Benton failed to comply with the FTCA's statute of limitations and that his claims should therefore be dismissed *with prejudice*.

*Standard*

The United States styles its request as one to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See generally* [13] at p. 3-4. However, attached to the Motion [12] are several documents that are not considered part of the pleadings. *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285-288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). And "[i]f a court considers matters outside of the pleadings, the motion to dismiss

must be treated as a motion for summary judgment under Rule 56(c)." *Id*. (citing *Tuely v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973)).[2]

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for

---

[2] When a district court converts a Rule 12(b)(6) motion to a motion for summary judgment, it must "provide the parties 'ample notice' that it may consider 'extra-pleading material' that would require conversion. However, when the parties themselves reference matters outside of the pleadings, the notice requirement is satisfied." *Campbell v. Cargill, Inc.*, 2023 WL 242388, at *1 (N.D. Miss. Jan. 17, 2023) (quoting *Boateng v. BP, P.L.C.*, 779 F. App'x 217, 220 (5th Cir. 2019)) (additional citations omitted). Here, both parties have submitted extra-pleading materials, and the Court therefore sees no need to provide additional notice.

specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

"Plaintiffs cannot sue the United States without its consent." *Beemer v. Holder*, 495 F. App'x 396, 400 (5th Cir. 2012) (citing *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)). "The Federal Tort Claims Act offers a limited waiver whereby parties can sue the United States for torts committed by federal employees acting within the scope of their employment." *Id*. (citing 28 U.S.C. § 1346(b)(1); *Bodin v. Vagshenian*, 462 F.3d 481, 483 (5th Cir. 2006)).

Although the FTCA provides a waiver of sovereign immunity, "[w]ith this waiver comes a strict statute of limitations: a party must file a lawsuit 'within six months after the date of *mailing*, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.'" *Id*. (quoting 28 U.S.C.§ 2401(b)) (emphasis previously added). Additionally, "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

In other words, after filing an administrative claim with a federal agency, a plaintiff has two options. If the agency does not make a final disposition of the claim within six months after it is filed, the plaintiff may at any time initiate a lawsuit in federal court. *See id*. If the plaintiff chooses not to do so and the claim is ultimately denied by the agency, the plaintiff must commence the lawsuit "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency[.]" 28 U.S.C. § 2401(b).

Here, Benton's claim was submitted on October 19, 2017—when Valentine submitted the SF-95 form to the Agency on Benton's behalf. The Agency took no official action on the claim

within six months. Benton did not commence a lawsuit. The next action from the Agency was a letter dated October 24, 2018, wherein Benton was advised that the Agency's tort claims paralegal investigator had unexpectedly passed away and that the Agency was in the process of reassigning the claim. On January 4, 2021, the Agency mailed a denial letter to Valentine via certified mail. Therefore, by operation of 28 U.S.C. § 2401(b), Benton's deadline to file his lawsuit was six months from January 4, 2021. The Agency's initial letter to Valentine dated October 23, 2017, which confirmed receipt of Benton's SF-95 form, clearly set forth these deadlines:

> This office will process the claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680. The filing of an administrative claim tolls the statute of limitations indefinitely, or until the appropriate Government agency takes final administrative action in writing on the claim. Final administrative action consists of a denial or final settlement offer. While the FTCA permits filing suit six months after the claim has been properly filed with the appropriate Government agency, filing suit at six months is not mandatory (Title 28, United States Code, § 2675(a)). If you should decide to file suit, a Federal judge will decide the case without a jury.

[12], Ex. 2 at p. 3.

Benton failed to meet his deadline. This lawsuit was not commenced until May 13, 2022—over sixteen months after the denial letter was mailed on January 4, 2021. Therefore, the United States urges the Court to dismiss the case. In his Memorandum [22], Benton concedes that the "case was not filed within the six (6) months following the mailing of a denial letter by the Defendant." [22] at p. 3. However, Benton takes the position that the Court should excuse his failure to comply based upon the equitable tolling doctrine.

Considering the foregoing, including but not limited to Benton's concession, the Court agrees that Benton failed to comply with the applicable statute of limitations. His lawsuit was

unquestionably filed more than six months after the denial letter was mailed. The Court will therefore turn to Benton's equitable tolling argument.[3]

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Trinity Marine Products, Inc. v. United States*, 812 F.3d 481, 488-89 (5th Cir. 2016) (quoting *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002); *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000)). The claimant "bears the burden of justifying equitable tolling." *Id*. at 489 (quoting *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir. 1999)). The District Court for the Southern District of Mississippi has described equitable tolling as "a device extended sparingly." *Dupree v. Jackson HMA LLC*, 2011 WL 2601107, at *3 (S.D. Miss. June 30, 2011) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)). Notably, "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Id*. (quoting *Irwin*, 498 U.S. at 96).

"Generally, a plaintiff seeking equitable tolling must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way.'" *Id*. (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "The Fifth Circuit has acknowledged that 'factors to consider in determining whether to apply equitable tolling include diligence on the part of the party bringing the action, and timely service of process.'" *James v. Progressive Security Ins. Co.*, 2020 WL 972706, at *4 (W.D. La. Jan. 24, 2020) (quoting *Flores v. United States*, 719 F. App'x 312, 316 (5th Cir. 2018)). "Likewise, it is a

---

[3] Although there was historically some disagreement as to whether the equitable tolling doctrine could be applied in the FTCA context, the Supreme Court's 2015 decision in *U.S. v. Wong* clarified that "the FTCA's time bars are nonjurisdictional and subject to equitable tolling." 575 U.S. 402, 420, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015). Therefore, consideration of the applicability of the equitable tolling doctrine is appropriate in this context.

common maxim that equity is not intended for those who sleep on their rights." *Flores*, 719 F. App'x at 316 (quoting *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)) (additional citation and quotation marks omitted).

This case presents a set of unique facts and circumstances, and, perhaps unsurprisingly, neither the parties nor the Court have located any cases involving a synonymous scenario. However, some authorities are instructive as to the way in which courts have treated the equitable tolling doctrine in the FTCA context in a more general sense.

Although not factually analogous, in a 1975 decision, the Fifth Circuit made clear that the applicable six-month window for filing suit under 28 U.S.C. § 2401(b) begins to run on the date of *mailing*—not the date of receipt. *Carr v. Veterans Admin.*, 522 F.2d 1355, 1356 (5th Cir. 1975). In *Carr*, the plaintiff, after missing the six-month deadline by only one day, argued that the six-month limitation period should begin to run not on the date of mailing but, instead, on the date she actually received notice of the denial. *Id.* While recognizing that the result was inequitable, the Fifth Circuit nevertheless found that the claim was time-barred:

> While it might be more equitable if the short period of limitations provided by 28 U.S.C. § 2401(b) commenced with receipt by the claimant of notice of the administrative agency's denial of the claim, the plain words of the statute defeat appellant's first argument. These specify that an action be begun within six months after the "date of mailing," and adherence to the statutory language is particularly necessary in a case such as this because the waiver of sovereign immunity embodied in this statute must be strictly construed. *See Childers v. United States*, 442 F.2d 1299 (5th Cir. 1971). Limitations began to run on the date of mailing[.]

*Id.* at 1357 (some citations omitted).

The Sixth Circuit has previously affirmed a district court's refusal to apply equitable tolling where the plaintiff did not file suit within six months of the agency's mailing of the denial letter, even though the plaintiff indisputably never received the denial letter. *Jackson v. United States*,

751 F.3d 712 (6th Cir. 2014). In *Jackson*, on January 13, 2009, the plaintiff, Bobby Jackson, was involved in a motor vehicle accident with an agent of the United States Immigration and Customs Enforcement Agency. *Id*. at 714. Jackson's attorney, Michael Shaffer, timely submitted a notice of claim to the agency, and "[t]he cover letter included with Jackson's claim listed Shaffer's mailing address as being located on Evergreen Road in Southfield, Michigan. The claim form itself included Jackson's name and mailing address." *Id*.

The agency sent a return letter to Shaffer dated July 7, 2009, confirming receipt of the claim. *Id*. That letter advised, "once we complete our adjudication, we will send you a letter informing you of our findings. If the agency fails to adjudicate your claims within six months of the date of receipt, or if it denies the claim, you can file a lawsuit in the appropriate United States District Court." *Id*. It is undisputed that Shaffer received the July 7, 2009 letter, which was mailed to Shaffer's Evergreen Road address. *Id*.

Nearly two years later, on March 8, 2011, the agency via certified mail sent a final determination letter denying the plaintiff's claim. *Id*. The agency sent the denial letter to the Evergreen Road address which, again, was the address listed on Shaffer's cover letter and was also the address where the agency had sent its previous letter. *Id*. Fifteen days later, on March 23, 2011, the letter was returned to the agency as undeliverable, specifically marked "Not Deliverable as Addressed. Unable to Forward." *Id*. Shaffer's firm had apparently changed locations in May 2010. *Id*. at 715. Despite the letter being returned, the agency took no further action to notify Shaffer or Jackson of the denial. *Id*.

After Jackson filed suit on January 11, 2012, the agency sought dismissal based upon Jackson's failure to file the lawsuit within six months of the date the denial letter was mailed. *Id*. Jackson opposed the motion and raised equitable tolling as a basis for the district court to allow

his claim to proceed. *Id*. The district court granted the agency's request for dismissal, finding that

the statute of limitations had expired and that equitable tolling should not apply because "Jackson

was not diligent or reasonable in not filing suit, reasoning that the July 7, 2009 receipt letter

received by Shaffer communicated that Jackson could have filed suit as early as December 2009

and yet she did not do so." *Id*. at 716 (quotation marks and citations omitted).

On appeal, the Sixth Circuit affirmed. *Id*. at 717. In doing so, the Sixth Circuit rejected

Jackson's contention that her failure to receive the denial letter prevented the statute of limitations

from beginning to run:

> The FTCA unambiguously states that the six-month limitation
> window runs "from the date of mailing." 28 U.S.C. § 2401(b). As
> our sister circuits have noted, the FTCA does not require that the
> claimant receive the denial letter in order to commence the six-
> month limitation period. *See Bertin v. V.A. Hosp.*, 860 F.2d 1355,
> 1357 (9th Cir. 1988) (declining to read a receipt requirement into
> the FTCA); *Carr v. Veterans Admin.*, 522 F.2d 1355, 1357 (5th Cir.
> 1975) (same). The FTCA requires only that the agency mail the
> denial by certified mail. This the agency did. An added receipt
> requirement would constitute a burden on the agency to guarantee
> delivery, and would in fact be construing the FTCA in favor of
> plaintiffs suing the United States, when the Supreme Court has
> instructed courts to do the opposite. *See Lane*, 518 U.S. at 192, 116
> S. Ct. 2092 ("Moreover, a waiver of the Government's sovereign
> immunity will be strictly construed, in terms of its scope, in favor of
> the sovereign." (internal citations omitted)).

*Id*.

The Sixth Circuit also noted that the Code of Federal Regulations provides that the denial

letter shall be "sent to the claimant, her attorney, *or* legal representative by certified or registered

mail." *Id*. (quoting 28 C.F.R. § 14.9(a)) (emphasis added). The letter need not be sent to both the

claimant *and* the attorney. In other words, by sending the letter to Shaffer, the agency complied

with its statutory duty and the statute of limitations began to run.

The Sixth Circuit additionally found that the district court did not abuse its discretion in declining to apply equitable tolling. *Id*. at 719. In particular, the Sixth Circuit noted that Jackson could not claim lack of knowledge of the applicable deadlines under the FTCA. *Id*. In addition, the court emphasized:

> [T]he district court's observation that the July 7, 2009 receipt letter received by Shaffer communicated that Jackson 'could have filed suit as early as December 2009' *as well as its reliance on the fact that Jackson did not file her suit despite having had nearly two years to do so was sound and did not amount to an abuse of discretion.* Moreover, the district court's attention to the fact that a full four months—rather than mere days or a week—had passed between the six-month statutory deadline and the filing of Jackson's claim was similarly reasonable and not an abuse of discretion.

*Id*. at 720 (citations omitted; emphasis added).

The District Court for the Middle District of Pennsylvania recently reached a similar conclusion. *Perry v. United States*, 2021 WL 2345541 (M.D. Pa. June 8, 2021). In *Perry*, the plaintiff, Dawn Perry, sought damages based upon the alleged medical negligence of Dr. Hoon Yoo, an employee of the United States, and Dr. Rafael Lopez-Monegro, who was not a federal employee. *Id*. at *1. The case was initially filed in state court, but, on June 20, 2017, the United States removed the case to federal court "on the basis that Defendant Dr. Hoon Yoo was eligible for Federal Tort Claims Act coverage[.]" *Id*. However, because Perry had not exhausted her administrative remedies prior to filing suit, the district court dismissed the claim against the United States and stayed the remaining proceedings so that Perry could exhaust her administrative remedies under the FTCA as to the claims against Dr. Yoo since she had not done so prior to filing suit. *Id*.

On July 12, 2017, Edward McDaid, counsel for Perry, submitted an administrative claim to the Department of Health and Human Services ("HHS") on Perry's behalf, utilizing the SF-95

form. *Id*. at *2. On that form, McDaid listed his address as 255 South 17th Street, Suite 1400 in

Philadelphia, Pennsylvania. *Id*. McDaid and counsel for HHS corresponded on two occasions,

using the 17th Street address. *Id*. On January 30, 2019, McDaid and Scott Driggs, an HHS attorney,

discussed a potential settlement of the claim; and, although Driggs extended a settlement offer, the

offer was rejected. *Id*.

On February 1, 2019, the agency sent via certified mail a denial letter to the 17th Street

address. *Id*. at *3. However, although admitting that the USPS tracking information indicated that

the letter was delivered on February 27, 2019, Perry (and her counsel) denied ever receiving it. *Id*.

Thereafter, the following transpired in district court:

> In May, 2020, no documents having been filed of record by any
> party, the Court ordered Plaintiff to file a letter setting forth the
> status of this action. In response, Plaintiff submitted a letter stating
> that "the matter has not been resolved administratively and,
> therefore, the case may be reopened and moved to the Court's active
> docket. Plaintiff's counsel thereafter took no action to pursue the
> case, resulting in the Court issuing another Order on September 29,
> 2020, lifting the stay in this case and ordering Plaintiff's counsel to
> file a letter "informing the Court whether he intends to proceed with
> this action, and if so, the manner in which he intends to do so,
> including whether an Amended Complaint will be filed in this
> matter."

*Id*.

On October 27, 2020—approximately twenty months after the denial letter was mailed to

her counsel— Perry filed an amended complaint alleging medical malpractice against the United

States. *Id*. The United States moved to dismiss the claim against it as time-barred. *Id*. at *2. The

district court agreed with the United States' position:

> It is undisputed that Plaintiff's counsel filed the administrative claim
> in July of 2017, that in January, 2019, Plaintiff's counsel and
> counsel for HHS discussed settling Plaintiff's administrative claim,
> and that the offer to settle was declined by Plaintiff at that time. Even
> assuming that Plaintiff did not receive the final denial letter mailed

12

on February 1, 2019, there is no evidence that Plaintiff thereafter took any action to determine the status of the administrative claim. Rather, it was only when this Court issued an Order on May 7, 2020, directing Plaintiff to file a status update that Plaintiff acknowledged that the "matter has not been resolved administratively." Nonetheless, despite this letter from Plaintiff, filed May 13, 2020, Plaintiff still took no further measures to pursue her FTCA claim until this Court issued a second Order on September 29, 2020 directing Plaintiff to inform the Court whether she intended to proceed with this action, which finally prompted Plaintiff to file an Amended Complaint on October 15, 2020. Thus, were it not for this Court twice inquiring into the status of Plaintiff's administrative claim against the United States, and whether Plaintiff intended to purse her action pending in federal court against Lopez-Monegro and/or file an Amended Complaint, there is no indication Plaintiff would have taken any action to pursue her FTCA claim.

Furthermore, Plaintiff cannot escape her lack of diligence by merely claiming that she never received the February 1, 2019 denial letter. Plaintiff admits that on or about January 30, 2019, her counsel spoke with counsel for the HHS and declined the offer to settle. Plaintiff does not assert that she ever contacted HHS or inquired into the status of her administrative claim during the 16-month period of time from her decision not to settle the administrative claim until the Court's May, 2020, Order. Nor does Plaintiff claim that counsel was in any way misled by HHS, informed that another settlement offer would be forthcoming, or told that a denial letter would not be, or had not been, mailed. One phone call or letter to HHS in the six months after Plaintiff's decision to decline HHS' settlement offer would have placed Plaintiff on notice that her claim had been denied and she needed to file her court action against the United States.

As a result, the record is clear that Plaintiff completely neglected to exercise diligence to preserve her legal rights and to pursue her FTCA action in court.

*Id*. at *8-9.

Against that backdrop, the Court turns to Benton's arguments in favor of equitable tolling.

Attached to his Response [21] is an affidavit executed by Valentine, wherein Valentine provides

the following information regarding the claim process:

3. When I filed the Tort Claim Act notice form SF-95 on behalf of the Plaintiff, as well as the Authority to Represent, I

specifically did not list my P.O. Box to insure [sic] that all notices and correspondence regarding the claim would be sent to my office address, not my P.O. Box.

4.    Approximately one year after the SF-95 was mailed, I inquired as to the status of the claim and was informed that the claims paralegal handling the claim had passed away unexpectedly. Shortly after that inquiry, I received a letter from the Defendant asking for patience as they investigated the claim.

5.    Over two years later, when the notice of denial was mailed to my P.O. Box, it was at the beginning of the Covid 19 pandemic. It had been over three years since the SF-95 had been filed,. [sic]

6.    Through out [sic] the Pandemic, I was at high risk for contracting Covid 19 due to age, past health issues and current medical problems, I stayed out of public places as much as possible through out [sic] the Pandemic, including the post office. I worked primarily from home the majority of 2021 and the first few months of 2022.

7.    I did not claim the denial letter mailed to my P.O. Box and it was returned without my knowledge as to it having been mailed.

8.    I did not receive the "notice of certified mail" showing the certified mail was in my P.O. Box until after the letter was returned. It did not show who the letter was from nor did it contain a "tracking number" on it so I could determine who had mailed it after it was returned.

9.    Had it not been for the delay in responding to the SF-95, the fact that the denial letter was mailed to the wrong address, as well as the onset Covid – 19 and the resulting Pandemic, I would have received the denial letter prior to it being returned.

10.    Following the slow down of Covid 19 and during the return to normal business, the Complaint was filed without knowledge of the denial letter having been mailed and without further any further [sic] correspondence from the Defendant.

[21], Ex. 3 at p. 1-3.

In his Memorandum [22], Benton raises arguments consistent with the assertions in Valentine's affidavit. For example, he argues that "[i]t is specifically alleged by the Plaintiff that the denial letter was ineffective due to it being mailed to an address other than that included in the SF-95 and the Authority to represent." [22] at p. 5.[4] He also emphasizes that the Agency did not resend the letter even though it was returned unclaimed, as well as asserting that the COVID-19 pandemic "was certainly an extraordinary event beyond the control of the Plaintiff or his attorney which would justify the tolling of the statute, even if the denial letter was sufficient to begin the statutory time limit to run." *Id*.

As to the contention that the letter was mailed to an address other than that included in the SF-95 form, the Court notes that the letter was mailed to the post office box listed on Valentine's cover letter. Furthermore, Valentine does not dispute that he received the two previous letters mailed to that address. Likewise, the affidavit sets forth no affirmative efforts that he undertook to determine the status of the claim from the time he received the letter in October 2018 until filing the lawsuit in May 2022.

And despite Valentine now stating in his affidavit that he intentionally did not list his post office box on the SF-95 form and the "Authority to Represent" document that he submitted to the Agency, he does not contend that he ever requested that the Agency *not* use the post office box— even *after* the Agency mailed letters to that address on two previous occasions. In fact, it seems logical and prudent, when provided with a post office box address, to utilize that address when mailing a document to that person. At a minimum, it certainly is not, in this Court's view,

---

[4] For the sake of clarity, the "Authority to Represent" document that Benton referenced is a document entitled "Power of Attorney and Attorney Authorization" that was included in Benton's claim packet. Within that document, Valentine's address is listed as his physical address—not his post office box.

unreasonable to do so. Taking all of these considerations into account, the Court rejects this argument.

As to the fact that the Agency did not resend the letter despite receiving notice that it was not received, the Court notes that the statute does not require the Agency to do so. The plaintiff in *Jackson* unsuccessfully raised the same argument. *See Jackson*, 751 F.3d at 716. While the Agency could have done more, this Court does not see its failure to do so—when it is not statutorily required—as a sufficient justification to justify equitable tolling, a device which should be "extended sparingly." *Dupree*, 2011 WL 2601107 at *3.

Benton also contends that the COVID-19 pandemic constitutes an extraordinary circumstance that warrants tolling. In his affidavit, Valentine states that he is at high risk for serious illness if he contracts COVID-19 and therefore during early 2021, he avoided heavily populated areas such as the post office. The Court does not in any way seek to downplay the seriousness of the concerns Valentine expressed in his affidavit. But at the same time, the Court does not view the pandemic as a justification to warrant the extraordinary relief Benton now requests. There has been no explanation as to why Valentine could not simply have had his mail forwarded to his address if he did not intend to check his post office box. Nor has there been any explanation as to why he could not have had somebody check his post office box for him. This is particularly true when considered in light of the fact that Valentine knew the Agency had utilized that mailing address to communicate with him on two previous occasions. The pandemic undeniably impacted many aspects of daily life. But it cannot be utilized to justify the requested relief under the circumstances.

Setting aside these specific arguments, the Court again emphasizes that the rationale underlying equitable tolling is to preserve a plaintiff's claim "when strict application of the statute

of limitations would be inequitable." *Trinity Marine Products*, 812 F.3d at 489. But the doctrine "is not intended for those who sleep on their rights[.]" *Id.* (quoting *Covey*, 865 F.2d at 662).

Considering this case in a broader sense, the Court finds that Benton did in fact sleep on his rights. Valentine submitted Benton's claim on October 19, 2017 and therefore was permitted to file suit as soon as April 2018. Other than apparently making *one* attempt to check on the status of the claim in October 2018, which ultimately yielded the October 24, 2018 letter from the Agency, Valentine seemingly did nothing to pursue the claim prior to filing this lawsuit suit in May 2022. In other words, he made one attempt to check on the status of the claim during the four-year period between when the lawsuit *could have* been filed (April 2018) and when it *was* filed (May 2022). While not binding authority, the Court notes that the Sixth Circuit in *Jackson* held that the district court did not abuse its discretion when taking into account the fact that the claimant waited nearly two years (after the initial six-month period lapsed) to file her lawsuit. *See Jackson*, 751 F.3d at 720 ("The district court's observation that the July 7, 2009 receipt letter received by Shaffer communicated that Jackson could have filed suit as early as December 2009 as well as its reliance on the fact that Jackson did not file her suit *despite having had nearly two years to do so* was sound and did not amount to an abuse of discretion.") (emphasis added; citations omitted).[5]

The Court is cognizant that the October 2018 letter, wherein the Agency explained that the claim was being reassigned, asked that Valentine be patient during the claim reassignment process. However, it cannot be seriously argued that the letter had any legal impact on the limitations period. Stated differently, it did not preclude Benton from initiating a lawsuit. And even though

---

[5] In *Jackson*, the Sixth Circuit also emphasized that the plaintiff could not claim a lack of knowledge as to the applicable deadlines. *Jackson*, 751 F.3d at 719. The same is true here. The initial letter from the Agency specifically set forth Benton's deadline to file suit and made clear that, though not required, he could file suit after six months, assuming that the claim was not denied prior to that time. *See* [12], Ex. 2 at p. 3. Benton was undoubtedly aware of the applicable deadline to file suit.

Valentine may have thought it prudent to wait *some* period of time for the claims process to play out prior to filing the lawsuit, he waited over three and a half years (from the date of the October 24, 2018 until May 13, 2022), and he did nothing in the interim. This does not constitute a diligent pursuit of rights. Similar to the holding of the District Court for the Middle District of Pennsylvania in *Perry*, this Court finds that Benton "completely neglected to exercise diligence to preserve [his] legal rights." *Perry*, 2021 WL 2345541 at *9.[6]

Equitable tolling is not warranted under the circumstances.

*Conclusion*

For the reasons set forth above, the United States' Motion [12] is GRANTED. Benton's claims are DISMISSED *with prejudice*. A Final Judgment consistent with this ruling will issue this day. This CASE is CLOSED.

SO ORDERED, this the 14th day of June, 2023.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[6] While not critical to the ultimate conclusion, the Court also notes that even after filing suit, Benton's conduct has not constituted a diligent pursuit of his rights. He filed his Complaint [1] on May 13, 2022. Pursuant to the Federal Rules of Civil Procedure, he had 90 days to complete service of process on the United States. *See* FED. R. CIV. P. 4(m). On October 31, 2022—approximately two and a half months *after* his deadline to complete service of process had expired—the Court, on its own initiative, entered an Order to Show Cause [5], directing Benton to show cause as to why he had not completed service of process and explain why the case should not be dismissed on that basis. It was only after this Court prodded him, in an attempt to move this case along, that Benton completed service of process. Again, the Court does not solely rely on this fact in reaching its conclusion, but it is indicative of and consistent with Benton's lack of diligence throughout this entire process. This is somewhat synonymous to the conduct at issue in *Perry*, wherein the court, in declining to apply equitable tolling, noted that the plaintiff only amended her complaint to add the United States as a defendant after the court inquired into the status of the claim on two separate occasions. *Perry*, 2021 WL 2345541 at *8.